NOT DESIGNATED FOR PUBLICATION

No. 116,065

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARTEZ M. BARRY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed August 4, 2017. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and STEVEN R. EBBERTS, District Judge, assigned.

*Per Curiam*: Cartez M. Barry appeals his convictions for aggravated battery, criminal discharge of a weapon at an occupied building, and felon in possession of a firearm. He challenges the sufficiency of the evidence to support each of his convictions. He also claims the trial court erred in not instructing the jury that his mere presence at the crime scene is not evidence of guilt. But our review of the record discloses ample evidence to support Barry's convictions and nothing improper about the trial court not instructing the jury about Barry's mere presence at the crime scene.

1

The events constituting the bases for Barry's convictions began on September 24, 2014, around 7 a.m. We will start with the evidence related to the aggravated battery charge; *i.e.*, that Barry knowingly caused great bodily harm or disfigurement to Michael Thompkins. See K.S.A. 2016 Supp. 21-5413(b)(1)(A).

Stephanie Byers, who was in her parked vehicle near the scene, observed two African American men, one of whom was wearing a gray hoodie and carrying a gun. Surveillance videos from area businesses showed Barry and Jerry Alford in the area shortly before these events. Barry was seen in the videos wearing a gray hoodie, a Florida Marlins baseball hat, and he had a Crown Royal bag in his pocket. After getting coffee at a nearby Burger King restaurant, which was confirmed by Alexander Edwards, the Burger King manager, Barry and Alford crossed the street where they met a third man, apparently Thompkins, near the Saigon Restaurant.

Crystal Porter, who was working at the drive-thru at a nearby McDonald's restaurant, saw these three men walking near the Saigon Restaurant across the street. One of the men, wearing a gray hoodie and a hat, pulled out a gun and fired four or five shots at the man in the middle of the three. Both the victim, later identified as Thompkins, and the shooter ran from the scene. The police found Thompkins nearby sitting in a "large amount of blood." Thompkins reported that he had been shot. Porter remembered seeing the three men before when they came through the McDonald's drive-thru in an orange Chevy Avalanche.

Donald Schalla also witnessed the shooting. He described the shooter as an African American male wearing a gray hoodie and a hat. Paula Livingston, who lived nearby, heard the shots and saw a man in a gray hoodie running from the scene and tucking something into the waistband of his pants.

2

When Barry was arrested later that day, he was riding in an orange Chevy Avalanche. He had a revolver in the waistband of his pants and a Crown Royal bag in his pocket, which contained ammunition for the revolver he was carrying. Barry's fingerprint was later found on the box in the sack that contained the ammunition. Bullets later found at the crime scene were identified as having been fired by the revolver found in Barry's possession when he was arrested. Barry was not wearing the hoodie at the time, but the hoodie, the Florida Marlin's hat, and other items of Barry's clothing were found in the possession of his girlfriend, Denise Salazar.

Barry was charged with aggravated battery, criminal discharge of a firearm, and criminal possession of a weapon by a convicted felon. With respect to the criminal possession of a weapon charge, Barry stipulated that he was a convicted felon in possession of a firearm when he was arrested. Also, there was testimony from Hai Nguyen regarding the charge of criminal discharge of a weapon at an occupied building. Nguyen testified that Barry did not have permission to shoot at the building she was in at the time and which was struck by one of the bullets discharged that morning. A jury convicted Berry on all counts.

On appeal, Barry contends the evidence supporting his convictions was "speculative" and insufficient to prove guilt. Our recitation above of the evidence contradicts that contention. A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the factfinder regarding the fact in issue. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016). Here, the State presented not only circumstantial but also direct evidence to support Barry's convictions. When viewed in the light favoring the State, a rational jury could easily find Barry guilty beyond a reasonable doubt of each of these crimes based on this evidence. See *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

Barry also claims the district court erred in not instructing the jury that Barry's association with the actual shooter was insufficient to establish guilt. He contends that there was evidence that Alford was the shooter and that Barry's mere presence when Alford committed the crime raised the possibility of Barry being found guilty "by mere association."

Barry did not request such an instruction, so we apply the clearly erroneous standard of review. K.S.A. 2016 Supp. 22-3414(3). To establish clear error, not only must the failure to give the instruction have been error, but we must be firmly convinced that but for the error the outcome of the case would have been more favorable to Barry. See *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

The instruction Barry now promotes is given within the context of a prosecution on an aiding and abetting theory. See *State v. Littlejohn*, 298 Kan. 632, 650, 316 P.3d 136 (2014). Barry was not tried under the theory that he aided and abetted another in the commission of these crimes. The State did not present any evidence that Alford or some other person was the shooter rather than Barry. The State's theory was that Barry was the shooter. To give the instruction for which Barry now advocates would not only have been legally and factually inappropriate, such an instruction would have been confusing rather than helpful to the jury. We find no error in failing to give this instruction, let alone any clear error.

Affirmed.